# In re Bassel Nabih ASSAAD, Respondent

File A72 824 993 - Houston

*Decided February 12, 2003*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  Case law of the United States Supreme Court holding, in the context of criminal proceedings, that there can be no deprivation of effective assistance of counsel where there is no constitutional right to counsel does not require withdrawal from *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir. 1988), finding a right to assert a claim of ineffective assistance of counsel in immigration proceedings, where the United States Courts of Appeals have recognized that a respondent has a Fifth Amendment due process right to a fair immigration hearing, which may be denied if counsel prevents the respondent from meaningfully presenting his or her case.

(2) The respondent did not establish that his former counsel's failure to file a timely appeal constituted sufficient prejudice to warrant consideration of his late appeal on the basis of ineffective assistance of counsel.

FOR RESPONDENT:  Edward D. Gillett, Esquire, Houston, Texas

AMICI CURIAE:[1]  Beth Werlin, Esquire; Nadine Wettstein, Esquire; and Mary Kenney, Esquire, Washington, DC

AMICUS CURIAE:[1]  Iris Gomez, Esquire, Boston, Massachusetts

FOR THE IMMIGRATION AND NATURALIZATION SERVICE:[1]  George R. Martin, Appellate Counsel

BEFORE:  Board En Banc:  SCHMIDT, HOLMES, HURWITZ, VILLAGELIU, COLE, GUENDELSBERGER, GRANT, MOSCATO, MILLER, BRENNAN, ESPENOZA, OSUNA, and HESS, Board Members.  Concurring Opinions: FILPPU, Board Member, joined by SCIALABBA, Chairman; PAULEY, Board Member.

---

[1]  We acknowledge the thoughtful arguments raised in the supplemental briefs submitted by amici curiae and the Immigration and Naturalization Service in response to our request for additional briefing.  We have considered both of the amici briefs dated April 23, 2001, and February 26, 2002, even though the former brief was not submitted directly in relation to the case now before us.

OSUNA, Board Member:

In a decision dated February 22, 2001, an Immigration Judge denied the respondent's motion to reopen, in which he alleged ineffective assistance of prior counsel and sought to pursue an appeal of a previous denial of relief. The respondent has appealed from that decision. The appeal will be dismissed.

## I. ISSUE

The issue before us is whether an exception to the 30-day time limit for filing an appeal from a decision of an Immigration Judge can ever be made based on a claim of ineffective assistance of counsel. In regard to this question, the Immigration and Naturalization Service seeks to have us reexamine and overturn our decision in *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988).

The Service notes that the United States Supreme Court has held, in the context of criminal proceedings, that where there is no constitutional right to the appointment of counsel at government expense, there is no constitutional basis for a claim of ineffective assistance of counsel. *Coleman v. Thompson*, 501 U.S. 722, 752-54 (1991); *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982). According to the Service, we have not addressed this Supreme Court authority, with which *Matter of Lozada* and its progeny are in conflict. Thus, the Service contends that we should reconsider *Lozada* in light of *Coleman* and *Wainwright*.

We acknowledge the arguments made by the Service but are not persuaded that we should withdraw from our decision in *Matter of Lozada*. Although the Supreme Court's decision in *Coleman* was rendered more than 10 years ago, the Service has never raised it to challenge *Lozada* in subsequent cases before the Board. *See, e.g.*, *Matter of A-A-*, 22 I&N Dec. 140 (BIA 1998); *Matter of N-K- & V-S-*, 21 I&N Dec. 879 (BIA 1997); *Matter of Rivera*, 21 I&N Dec. 599 (BIA 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997) (unpublished table decision). Furthermore, for more than a decade the circuit courts have recognized *Lozada* as valid precedent setting forth procedures by which respondents may present claims of ineffective assistance of counsel.

## II. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Syria who entered the United States in 1993 as a nonimmigrant visitor. The record reflects that he was subsequently granted conditional permanent resident status on the basis of his marriage to a United States citizen. Removal proceedings were instituted in 1997 after the termination of his status.

In proceedings before the Immigration Judge, the respondent sought a waiver under section 216(c)(4)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1186a(c)(4)(B) (1994 & Supp. IV 1998), to remove the conditional basis of his permanent resident status. The Immigration Judge denied the waiver, finding that limited evidence was submitted to assess the qualifying marriage and that the respondent knew little about his wife. The Immigration Judge ordered the respondent removed from the United States in a decision dated April 2, 1998. The respondent reserved appeal but his attorney submitted the appeal a week late.[2] We dismissed the appeal as untimely on September 19, 2000.[3]

On February 12, 2001, nearly 3 years after the Immigration Judge's decision, the respondent, represented by new counsel, sought reopening, presumably so the Immigration Judge would reissue his decision in order for a timely appeal to be filed.[4] With his motion, the respondent submitted evidence in compliance with the procedural requirements of *Matter of Lozada* for making a claim of ineffective assistance of counsel, including a grievance filed with the State Bar of Texas. The Immigration Judge denied the motion on February 22, 2001, and the respondent has appealed from that decision.

On appeal, the respondent has admitted that the motion filed with the Immigration Judge was untimely, but he argues that former counsel did not inform him of our decision dismissing his original appeal as untimely. He asserts that he did not learn of our order until a Service officer sought to arrest him. The respondent therefore contends that his motion asserting a claim of ineffective assistance of counsel should have been considered. In

---

[2]  The respondent was competently represented by counsel at the hearing before the Immigration Judge. After the conclusion of those proceedings, however, the respondent apparently dismissed that attorney and retained new counsel. It was the second attorney who filed the appeal late and who is the subject of the present ineffective assistance claim filed by the respondent's current counsel.

[3]  The Immigration Judge's order became final when the respondent's appeal was not timely filed. *See* section 101(a)(47)(B)(ii) of the Act, 8 U.S.C. § 1101(a)(47)(B)(ii) (2000) (providing that a deportation order becomes final upon the expiration of the period in which the alien is permitted to seek review by the Board); 8 C.F.R. § 3.38(b) (2002) (specifying that an appeal must be filed within 30 days); 8 C.F.R. § 3.3(a)(1) (2002) (describing how an appeal may be taken to the Board); *see also Matter of Jean*, 23 I&N Dec. 373, 378 (A.G. 2002).

[4]  The Service asserts that the respondent should have filed his motion to reopen with the Board, rather than with the Immigration Judge. We need not address the Service's procedural objections, because we view the issues posed by this case to be sufficiently important for us to review pursuant to our independent authority to certify, reopen, or reconsider a case. 8 C.F.R. §§ 3.1(c), 3.2(a) (2002); *see also Matter of G-D-*, 22 I&N Dec. 1132, 1133-34 (BIA 1999) (stating that the Board uses its authority to reopen or reconsider cases sparingly, in "truly exceptional" situations). Our invocation of these powers extinguishes any procedural questions pertaining to the timeliness of the respondent's *Lozada* motion or to the forum in which it is filed.

support of his appeal, he has submitted a letter from the State Bar of Texas to his current counsel, stating that the Investigatory Panel of the District Grievance Committee determined, based on the respondent's complaint, that there was just cause to believe that former counsel committed professional misconduct.

## III.  ANALYSIS

### A. *Matter of Lozada*

In *Matter of Lozada*, *supra*, at 639-40, we set forth the procedural requirements for a claim of ineffective assistance of counsel, noting that they were necessary to provide a basis for evaluating the many claims presented, to deter baseless allegations, and to notify attorneys of the standards for representing aliens in immigration proceedings.  First, we held that the alien must submit an affidavit detailing the agreement that was entered into with counsel with respect to the actions to be taken and the representations counsel made or did not make in this regard.  We also stated that the alien must inform counsel of the allegations of ineffective assistance and give him or her the opportunity to respond.  Finally, we concluded that the alien must file a complaint with the appropriate disciplinary authorities, such as a state bar, with respect to any violation of counsel's ethical or legal responsibilities, or adequately explain why no filing was made.  In addition to these requirements, an alien alleging ineffective assistance of counsel must also show that he or she was prejudiced by the actions or inactions of counsel.  *Id.* at 640.

We revisited these procedures in *Matter of Rivera*, *supra*, at 603-05, where we set forth further policy reasons for the "complaint" requirement of *Matter of Lozada*.  We noted that such a filing increases our confidence in the validity of the particular claim, reduces the likelihood that an evidentiary hearing will be needed, and serves our long-term interests in monitoring the representation of aliens by the immigration bar.  *Matter of Rivera*, *supra*, at 605.  We further determined that the bar complaint requirement acts as a protection against collusion between counsel and client to achieve delay in proceedings.

It is clear that *Matter of Lozada* provides a measure of protection for aliens who are prejudiced by incompetent counsel.  As a removal proceeding has the potential to deprive a respondent of the right to stay in the United States, which can include separation from family and return to possible persecution, the procedures in that proceeding must be fundamentally fair.  Moreover, as discussed below, the courts have consistently recognized that ineffective counsel may deprive an alien of a fair hearing.  *See, e.g.*, *Saakian v. INS*, 252 F.3d 21, 24-25 (1st Cir. 2001).  The *Lozada* approach has

provided an appropriate framework for analyzing ineffective assistance claims, balancing the need for finality in immigration proceedings with some protection for aliens prejudiced by ineffective assistance of counsel.

## B.  Supreme Court and Circuit Court Decisions

The Service argues that *Matter of Lozada* conflicts with the Supreme Court decisions in *Coleman v. Thompson*, *supra*, and *Wainwright v. Torna*, *supra*. In *Wainwright*, the Supreme Court found that since a convicted felon had no constitutional right to counsel to pursue a discretionary state appeal, he could not be deprived of the effective assistance of counsel by his attorney's failure to timely file the discretionary appeal. *Wainwright v. Torna*, *supra*, at 587-88.

Citing that decision, the Supreme Court reiterated in *Coleman* that where there is no constitutional right to counsel, there can be no deprivation of effective assistance of counsel.  In that case, the prisoner's attorney had sought state habeas review of various claims, but had filed his state appeal late, resulting in a procedural default.  The prisoner claimed that his attorney's error should excuse the procedural default and allow federal habeas review of the merits of his claim.  The Court rejected this argument, holding that because there is no constitutional right to an attorney in state post-conviction proceedings, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.  *Coleman v. Thompson*, *supra*, at 752-53.

In light of *Coleman* and *Wainwright*, the Service argues that we should reconsider and overturn *Matter of Lozada* and hold that a claim of ineffective assistance of counsel cannot amount to a constitutional violation in immigration proceedings, where there is no constitutional right to appointed counsel.  Amici disagree, arguing that respondents in immigration proceedings have both a constitutional and statutory right to competent counsel.[5] According to amici, the Supreme Court's decisions in *Coleman* and *Wainwright* are limited in their application to the specific criminal contexts in which they arose and are not relevant to whether respondents in immigration proceedings may assert a constitutional claim of ineffective assistance based on the Due Process Clause of the Fifth Amendment.

---

[5]  In light of our disposition of this case, we find it unnecessary to address whether there is a statutory basis in the Immigration and Nationality Act for raising a claim of ineffective assistance of counsel.  *See* sections 240(b)(4)(A), 292 of the Act, 8 U.S.C. §§ 1229a(b)(4)(A), 1362 (2000) (stating that a respondent has the "privilege" of being represented, "at no expense to the Government").  We also do not reach the argument advanced by amici that claims of ineffective assistance derive from regulations of the Executive Office for Immigration Review that enforce standards of conduct for those appearing before Immigration Judges and the Board.  *See* Professional Conduct for Practitioners – Rules and Procedures, 65 Fed. Reg. 39,513 (2000).

We are not persuaded by the arguments advanced by the Service and decline to overrule our decision in *Matter of Lozada*, *supra*.  We first acknowledge some ambiguity in the basis set forth in that decision for respondents to assert ineffective assistance claims.  Relying on governing circuit court law at the time, we stated that any right to counsel a respondent may have in immigration proceedings is grounded in the Fifth Amendment guarantee of due process, and that ineffective assistance of counsel is a denial of due process only if the proceedings were so fundamentally unfair that the alien was prevented from reasonably presenting his or her case.  *Id.* at 638 (citing *Magallanes-Damian v. INS*, 783 F.2d 931 (9th Cir. 1986); *Paul v. United States INS*, 521 F.2d 194 (5th Cir. 1975)).  Our decision can also be seen as setting forth a "high standard" by which we will consider exercising our limited certification authority in a case where attorney malfeasance has occurred.  *Matter of Lozada*, *supra*, at 639; *see also Matter of Jean*, 23 I&N Dec. 373, 380 n.9 (A.G. 2002) (noting that the Board's authority to certify cases to itself in its discretion is limited to exceptional circumstances and is not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations, where enforcing them might result in hardship).  The Service appears to acknowledge that we may consider claims of ineffective assistance of counsel under such authority.

In any event, since *Matter of Lozada* was decided 15 years ago, the circuit courts have consistently continued to recognize that despite having no right to appointed counsel in an immigration hearing, a respondent has a Fifth Amendment due process right to a fair immigration hearing and may be denied that right if counsel prevents the respondent from meaningfully presenting his or her case.  *See, e.g.*, *Osei v. INS*, 305 F.3d 1205, 1208 (10th Cir. 2002); *Xu Yong Lu v. Ashcroft*, 259 F.3d 127 (3d Cir. 2001); *Jobe v. INS*, 238 F.3d 96 (1st Cir. 2001); *Hernandez v. Reno*, 238 F.3d 50 (1st Cir. 2001); *Huicochea-Gomez v. INS*, 237 F.3d 696 (6th Cir. 2001); *Iavorski v. United States INS*, 232 F.3d 124 (2d Cir. 2000); *Lata v. INS*, 204 F.3d 1241 (9th Cir. 2000); *Akinwunmi v. INS*, 194 F.3d 1340 (10th Cir. 1999); *Mejia Rodriguez v. Reno*, 178 F.3d 1139 (11th Cir. 1999); *Rabiu v. INS*, 41 F.3d 879 (2d Cir. 1994); *Figeroa v. United States INS*, 886 F.2d 76 (4th Cir. 1989).

The United States Court of Appeals for the Fifth Circuit, in whose jurisdiction this case arises, has joined the other circuits that have found a basis in the Fifth Amendment for ineffective assistance of counsel claims.  In *Goonsuwan v. Ashcroft*, 252 F.3d 383, 385 n.2 (5th Cir. 2001), the court noted that while there is no Sixth Amendment right to counsel in deportation proceedings, because such proceedings are civil in nature, aliens do have a constitutionally protected right to procedural due process in deportation proceedings.  This due process right is violated when the representation afforded to an alien is so deficient as to impinge on the fundamental fairness

of the proceedings. *Id.*; *see also Lara v. Trominski*, 216 F.3d 487 (5th Cir. 2000) (upholding the requirements set forth in *Matter of Lozada*); *Miranda-Lores v. INS*, 17 F.3d 84 (5th Cir. 1994). We are required to follow this Fifth Circuit law in cases arising within that circuit. *Matter of Yanez*, 23 I&N Dec. 390 (BIA 2002); *Matter of K-S-*, 20 I&N Dec. 715 (BIA 1993).

Numerous circuit court decisions have also generally endorsed the procedural requirements we set forth in *Matter of Lozada* for making a claim of ineffective assistance of counsel. *See, e.g.*, *Xu Yong Lu v. Ashcroft*, *supra*, at 132 (concluding that the three-prong *Lozada* test is a "reasonable exercise of the Board's discretion"); *Lara v. Trominski*, *supra*, at 498 (finding that the general application of the *Lozada* rules is not an abuse of discretion); *Lata v. INS*, *supra*, at 1246 (noting that the Board has laid out a "comprehensive procedure" that petitioners should follow, and that this procedure has been adopted by other circuits). *See generally Fajardo v. INS*, 300 F.3d 1018 (9th Cir. 2002).[6]

Significantly, most of the decisions cited above were rendered in the decade after the Supreme Court decided *Coleman v. Thompson*, *supra*. This strongly suggests that the courts of appeals have not viewed the Supreme Court's pronouncements in the criminal context as requiring a reexamination of the due process underpinnings of ineffective assistance of counsel claims in the immigration context. The sole circuit court decision that has questioned the basis for *Matter of Lozada* and that has suggested that aliens in immigration proceedings may not have a constitutional due process basis for raising ineffective assistance claims did so in dicta and in a divided opinion. *Stroe v. INS*, 256 F.3d 498, 500 (7th Cir. 2001);[7] *see also Pop v. INS*, 279 F.3d 457 (7th Cir. 2002). Moreover, the court in *Stroe v. INS*, *supra*, specifically stated that the *Lozada* requirements are within the Board's discretionary authority. In any event, the Seventh Circuit had previously held that ineffective assistance of counsel in an immigration proceeding may result

---

[6] We acknowledge that some courts have taken a "broad" view of the *Lozada* requirements, holding that we should apply a flexible approach by not mandating strict adherence to all of the *Lozada* steps in every case. *See Xu Yong Lu v. Ashcroft*, *supra*, at 134 (noting that while in many, if not most, cases, persons alleging ineffective assistance should file disciplinary complaints, this is not an "absolute" requirement); *Saakian v. INS*, *supra* (endorsing a flexible approach to *Matter of Lozada*); *Castillo-Perez v. INS*, 212 F.3d 518, 526 (9th Cir. 2000) (holding that the *Lozada* requirements are generally reasonable, but that full compliance is not required if the record independently shows that the "ineffective assistance" claim is legitimate and substantial). We will apply such circuit law as is appropriate in each circuit. However, because the respondent in the present case fully complied with the *Lozada* steps, we find it unnecessary to consider whether to apply this "flexible" approach generally to all cases.

[7] According to Judge Wood's concurring opinion in *Stroe v. INS*, *supra*, at 505, "[A]s the Supreme Court constantly reminds us, due process is a flexible concept, and I see no reason to make a categorical assumption that it will never be implicated in a counsel-related problem in an immigration case."

in a denial of due process. *Mojsilovic v. INS*, 156 F.3d 743 (7th Cir. 1998); *Henry v. INS*, 8 F.3d 426 (7th Cir. 1993). The court in *Stroe* did not explicitly overrule this prior precedent.

As a result of this extensive body of law, the principle that aliens may have a valid claim of ineffective assistance of counsel if an attorney's actions were so deficient as to foreclose the fundamental fairness of the proceedings is settled law in most circuits. We are therefore bound by this precedent. *Matter of Anselmo*, 20 I&N Dec. 25, 31-32 (BIA 1989). These circuit court cases, including those in the Fifth Circuit, specifically considered the issue of ineffective assistance of counsel in the immigration context and concluded that it may amount to a constitutional due process violation.

The Supreme Court cases cited as controlling by the Service were decided years ago and arose in the context of criminal, rather than immigration, proceedings. *Coleman v. Thompson*, *supra*, at 752-54; *Wainwright v. Torna*, *supra*, at 587-88. We acknowledge, of course, that Supreme Court law is paramount and must be respected. However, accepting the Service's interpretation of Supreme Court law in this case would amount to a decree by the Board that the circuit courts that have analyzed the issue in the immigration context, and who are clearly able to consider the Supreme Court's authority, have reached an incorrect result. We are unwilling to so hold, as it is beyond our limited authority as an administrative decision-making body. *Matter of Martin*, 23 I&N Dec. 491, 492 (BIA 2002) (deeming circuit court decisions to be "authoritative" precedent).[8]

We therefore decline to accept the Service's argument that *Matter of Lozada* should be overruled as a result of the Supreme Court's decisions in *Coleman v. Thompson* and *Wainwright v. Torna*. We see no reason, based on Supreme Court law that has never been directly applied to immigration proceedings, to disavow a decision that has garnered general approval in the circuit courts for more than 15 years.[9]

---

[8] We also note that the current regulations governing asylum claims specifically include ineffective assistance of counsel as a potential exception to the 1-year deadline for filing asylum applications. *See* 8 C.F.R. § 208.4(a)(5)(iii) (2002) (providing that ineffective assistance of counsel may constitute "extraordinary circumstances" excusing a failure to file an asylum application within the 1-year deadline). These regulations mandate that an alien claiming such circumstances must comply with the procedural steps of *Matter of Lozada*. The supplementary information to the latest revision of the asylum regulations took note of the Service's arguments before the Board advocating a reexamination of *Matter of Lozada* as part of a broader assessment of the role that counsel error may play in requests for relief in immigration proceedings. Asylum Procedures, 65 Fed. Reg. 76,121, 76,124 (2000). However, the language of 8 C.F.R. § 208.4(a)(5)(iii) has remained unchanged since it was added to the asylum regulations in 1997.

[9] In their respective concurring opinions, Board Members Filppu and Pauley, while reaching different conclusions about the effect of *Coleman v. Thompson* and *Wainwright v. Torna*

(continued...)

### C.  Application of *Matter of Lozada*

In the present appeal, the respondent has complied with the three-step procedural requirements of *Matter of Lozada*.  He has provided the required affidavit, informed former counsel of the allegations against him, and notified the appropriate disciplinary authorities in the State of Texas.  However, we must dismiss the respondent's appeal because he has not shown the required prejudice stemming from prior counsel's actions.  The respondent asserts that former counsel's failure to file the appeal in a timely manner is per se prejudicial.  We disagree.  Although, in some instances, counsel's failure to file a timely appeal may constitute per se prejudice in removal proceedings, that is not the case here.

The exact parameters of due process protections in cases involving ineffective assistance of counsel are unclear.  *See Chowdhury v. Ashcroft*, 241 F.3d 848, 854 (7th Cir. 2001) (holding that while there is case law providing that aliens have protection against ineffective counsel based on the Fifth Amendment, the extent of that protection is unclear, and probably fewer protections are guaranteed than if immigration proceedings were governed by the Sixth Amendment); *Mejia Rodriguez v. Reno*, *supra*, at 1146 (holding that an alien asserting an ineffective assistance of counsel claim must make a showing that he or she was eligible for the relief requested).  The Fifth Circuit has held that an alien seeking to prevail on a claim of ineffective assistance of counsel must show not only that counsel was ineffective, but also that the alien suffered "substantial prejudice" as a result of counsel's errors.  *Miranda-Lores v. INS*, *supra*, at 85; *Ogbemudia v. INS*, 988 F.2d 595, 598 (5th Cir. 1993); *see also United States v. Lopez-Ortiz*, 313 F.3d 225, 230 (5th Cir. 2002) (stating that procedural protections accorded an alien in a removal proceeding are less stringent than those available to a criminal

---

[9]  (...continued)

make the point that the Board should follow Supreme Court authority in instances where that authority conflicts with precedents of the circuit courts.  We agree.  As noted above, Supreme Court law is paramount and the Board, along with every other judicial or quasi-judicial tribunal in this country, is mandated to follow it.  Were we convinced of a conflict between the Supreme Court's pronouncements and circuit court precedents, we would follow Supreme Court law without question.  In this case, however, for the reasons explained in this decision, we find that the Court's decisions in *Coleman* and *Wainwright* do not govern the question whether there is a Fifth Amendment basis for raising ineffective assistance of counsel claims in immigration proceedings, where virtually every circuit that has looked at this issue over the years has not identified such a conflict with applicable circuit law.  *Matter of Mangabat*, 14 I&N Dec. 75 (BIA 1972), *aff'd sub nom. Cabuco-Flores v. INS*, 477 F.2d 108 (9th Cir. 1973), cited by Board Member Pauley, is not applicable to this case, as it involved a unique situation where the Solicitor General was affirmatively challenging circuit court precedent before the Supreme Court.  That is not the situation here.

defendant because removal hearings are civil, rather than criminal, proceedings).

We note that in *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000), the Supreme Court held that "counsel's constitutionally deficient performance depriv[ing] a defendant of an appeal that he otherwise would have taken," establishes a "successful ineffective assistance of counsel claim entitling him to an appeal" without any additional showing of prejudice. However, for the same reasons that we do not find the Supreme Court's decisions in the criminal context in *Coleman v. Thompson* and *Wainwright v. Torna* controlling in the immigration context, we do not find that the Court's pronouncement in *Roe v. Flores-Ortega* requires us to find per se prejudice from counsel's failure to file an appeal in immigration proceedings. *See Hernandez v. Reno*, *supra*, at 55-57 (1st Cir. 2001) (holding that while, in the criminal context, counsel's failure to comply with a defendant's request to appeal is treated as prejudice per se, citing *Roe v. Flores-Ortega*, the court was unwilling to "incorporate into civil deportation proceedings the whole apparatus of Sixth Amendment precedent"). *But see Dearinger ex rel. Volkova v. Reno*, 232 F.3d 1042 (9th Cir. 2000) (adopting the reasoning of *Roe v. Flores-Ortega* where an appeal of a denial of asylum was filed late).

Our review of the record indicates that the respondent received a fair and complete hearing before the Immigration Judge. He was well represented by counsel throughout the hearing before the Immigration Judge and was provided every opportunity to present his case for a waiver under section 216(c)(4)(B) of the Act.[10] In a careful decision, the Immigration Judge determined that the respondent had failed to meet his burden of showing that he had contracted a valid marriage, which is necessary for a waiver under section 216(c)(4)(B). *Matter of Stowers*, 23 I&N Dec. 605 (BIA 1999); *Matter of Gawaran*, 20 I&N Dec. 938 (BIA 1995). In addition, the respondent has made no showing in his motion alleging ineffective assistance of counsel that he is eligible for any relief from removal, or that there was error in the Immigration Judge's decision. Accordingly, we find that the respondent has not shown that he was prejudiced from prior counsel's conduct, and we will dismiss the appeal.

## IV. CONCLUSION

*Matter of Lozada*, *supra*, has given the Board a useful framework for evaluating claims of ineffective assistance of counsel and is in accord with controlling precedent in most circuits. We therefore decline to withdraw from its reasoning based on Supreme Court law that has never been directly

---

[10] As noted earlier, the respondent was represented by one attorney before the Immigration Judge, but he hired a different attorney to file his appeal with the Board. *See supra* note 2.

applied to immigration proceedings. Furthermore, applying the *Lozada* standards to this case, we find that the respondent has failed to show the requisite prejudice to warrant consideration of his late appeal. Accordingly, the appeal will be dismissed.

**ORDER:** The respondent's appeal is dismissed.

*CONCURRING OPINION:* Lauri Steven Filppu, Board Member, in which Lori L. Scialabba, Chairman, joined

I respectfully concur. I agree that the respondent has not shown that we should entertain his original untimely appeal from the order of removal. Unlike the majority, however, I find no basis for distinguishing United States Supreme Court authority on the circumstances in which a party may claim ineffective assistance of counsel.

In *Coleman v. Thompson*, 501 U.S. 722 (1991), and *Wainwright v. Torna*, 455 U.S. 586 (1982), the Supreme Court ruled that the constitutional right to the effective assistance of counsel applies only to proceedings in which the government is obligated by the Constitution to provide counsel at government expense to the person subject to those proceedings. The rationale for that ruling is very simple. When the government is constitutionally required to supply counsel, it cannot effectively escape that obligation by supplying an incompetent lawyer. Since the government must provide the attorney, mistakes made by that attorney will be attributed to the government, which must bear the cost resulting from those mistakes. *Coleman v. Thompson*, *supra*, at 754; *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

On the other hand, when the government is not constitutionally required to provide counsel, a claim of ineffective assistance of counsel will not lie and any mistakes made by counsel are imputed to the client. *Coleman v. Thompson*, *supra*, at 752-54. Absent a governmental obligation to supply counsel, a client is simply bound by the actions of his or her attorney, even when, as here, that attorney misses a deadline through no fault of the client. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396-97 (1993) (rejecting a lower court's attempt to separate the conduct of an attorney from the consequences to the client and stating that clients must "be held accountable for the acts and omissions of their chosen counsel"); *United States v. Boyle*, 469 U.S. 241, 249-50 (1985) (holding that a taxpayer was not excused from filing late by reasonable reliance on the attorney handling the tax matter); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962) (finding "no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client"); *see also United States v. Locke*, 471 U.S. 84, 100-01 (1985) (stating that a "filing deadline cannot be complied with, substantially or otherwise, by filing late–even by one day").

The reasoning behind these Supreme Court decisions does not square with the large body of lower court cases, identified by the majority, finding a Fifth Amendment right to the effective assistance of counsel in immigration proceedings, even though the government has no constitutional obligation to provide counsel to aliens in such proceedings. Adding to the dilemma is our own case law holding that we follow circuit precedent, absent very rare circumstances. *E.g.*, *Matter of Anselmo*, 20 I&N Dec. 25 (BIA 1989). I agree with the majority that we should not lightly decline to follow circuit precedent. But neither should we decline to follow Supreme Court precedent. When the two seem to conflict, the only answer is to follow the Supreme Court, unless a valid ground for distinction emerges such that the conflict disappears.

Favoring lower court precedent over the Supreme Court is particularly problematic in a situation such as we have here, where only one court of appeals has ever confronted *Coleman v. Thompson*, *supra*, or *Wainwright v. Torna*, *supra*, in the civil immigration context. In that case, the United States Court of Appeals for the Seventh Circuit expressed concern that "the Board may not be cognizant of the relevant precedents governing the right to counsel" and strongly suggested that Supreme Court law, including *Coleman*, was controlling. *Stroe v. INS*, 256 F.3d 498, 500-01 (7th Cir. 2001).[1]

Despite its heavy emphasis on simple adherence to long-standing circuit law, the majority does hint at several possible grounds for distinguishing the Supreme Court's rulings, but none of them is convincing. The majority explains that the Supreme Court cases were decided years ago and arose in the criminal context, and it suggests that there is a difference between the right to the effective assistance of counsel arising under the Sixth Amendment and one arising under the Fifth Amendment.

I do not understand the majority to say that *Coleman v. Thompson*, *supra*, a 1991 ruling, was decided so long ago that its validity today is in doubt. Instead, the majority is justifiably concerned with the number of subsequent court of appeals rulings in the immigration context that have not addressed it. But, ultimately, this concern must give way if there is not a solid analytical ground for distinction. The lower courts do not have the authority to overrule the Supreme Court. If *Coleman* and *Wainwright* are not distinguishable, it does not matter how many lower court cases, oblivious to Supreme Court law, exist. Once recognized, the Supreme Court's rule still prevails.

---

[1] The court in *Stroe* described its own older case law, as well as that from most other circuits, as having "assumed" the existence in immigration cases of a right to the effective assistance of counsel. *Stroe v. INS*, *supra*, at 499-500; *see also Pop v. INS*, 279 F.3d 457, 460 (7th Cir. 2002) (citing *Stroe* and stating that "[in] this circuit, . . . whether there exists a constitutional right to effective assistance of counsel in immigration cases is virtually foreclosed"). *Stroe* should give the majority great pause before giving precedence to older circuit law in Seventh Circuit cases.

The "criminal law" distinction is also groundless. If there were an absolute dichotomy between civil and criminal cases, we should then be following the Supreme Court's rulings in civil cases such as *United States v. Boyle*, *supra*, and *Link v. Wabash R.R. Co.*, *supra*, where parties are charged with the mistakes of their lawyers. Yet the majority's reference to a criminal law distinction may be intended to invoke a presumed contrast between the Fifth and Sixth Amendments. Indeed, such a contrast would naturally suggest itself. It does not, however, actually exist in relation to the issue now before us.

As the Supreme Court has explained, the Sixth Amendment applies only to criminal trial proceedings. It does not apply to criminal appeals. *E.g.*, *Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 159-61 (2000) (stating that in "light of our conclusion that the Sixth Amendment does not apply to appellate proceedings, any individual right to self-representation on appeal . . . must be grounded in the Due Process Clause"); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985) (explaining that the constitutional right to counsel during the first appeal as of right in the criminal context derives in significant part from the Due Process Clause and declaring that a "first appeal as of right therefore is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney").

The Sixth Amendment, consequently, is *not* the source of the government's constitutional obligation to furnish counsel during a criminal defendant's first appeal as of right. *See Ross v. Moffitt*, 417 U.S. 600 (1974) (holding that the combination of the Due Process and Equal Protection Clauses does not require appointment of counsel for discretionary criminal appeals or discretionary review in the Supreme Court itself); *Evitts v. Lucey*, *supra*; *Douglas v. California*, 372 U.S. 353 (1963). Thus, the Supreme Court's case law indicates that the differences between the Fifth and Sixth Amendments have no bearing on the fundamental question whether an individual can claim the right to the effective assistance of counsel in a given context. Instead, what matters is whether the government has a constitutional obligation to furnish counsel, regardless of the specific source of that right, whether it be the Sixth Amendment at the trial stage or a combination of due process and equal protection during the first appeal as of right in the criminal context.

The amici advance claims not endorsed by the majority. But the amici also fail in their further attempts to distinguish *Coleman* and *Wainwright* or to identify sources outside the Constitution for a right to the effective assistance of counsel in civil immigration proceedings. Amici seek to distinguish *Coleman* because of its concerns over federalism; because it involved a discretionary state appeal, as opposed to a first appeal as of right such as the regulations give to aliens in removal cases; and because the Attorney General

has sought to promote the competency of the immigration bar through the regulations pertaining to attorney discipline. *See* 8 C.F.R. §§ 3.101-.109, 292.3 (2002).

Certain aspects of *Coleman* were influenced by federalism concerns. But, contrary to amici's contentions, there is no indication in *Coleman*'s discussion of the right to "effective assistance" suggesting that the outcome depends on whether the prosecuting authority is the Federal Government or a state government. Amici are correct in noting that the death-row inmate in *Coleman* was attacking a procedural default, the late filing of a state appeal by his lawyer, occurring after the functional equivalent of his first appeal as of right. The controlling factor, however, was the absence of a constitutional obligation on the state to provide counsel at the stage where the procedural default occurred. In this respect, *Coleman* is not distinguishable from the respondent's case, but rather is similar, because the collateral nature of Coleman's proceedings meant that the state government was not constitutionally required to provide counsel to Coleman, just as the Government is not constitutionally required to provide counsel to the respondent in this removal proceeding. The respondent thus stands on the same constitutional footing as did Coleman when it comes to the question whether either of them has the right to the effective assistance of counsel. *See Evitts v. Lucey*, *supra*, at 396 n.7.

As for amici's reference to the attorney discipline regulations, this is similar to amici's argument that there is either a statutory or regulatory basis for finding a right to the effective assistance of counsel in civil immigration cases, even though the Constitution may not provide such a right. In removal proceedings, a respondent has the "privilege" of being represented, "at no expense to the Government." Sections 240(b)(4)(A), 292 of the Immigration and Nationality Act, 8 U.S.C. §§ 1229a(b)(4)(A), 1362 (2000). This, however, does not imply a right to competent counsel. *See Pennsylvania v. Finley*, 481 U.S. 551 (1987) (indicating that the conduct of counsel appointed under state law, but not constitutionally mandated, is not to be measured against the standard for constitutionally effective counsel); *Taylor v. Dickel*, 293 F.3d 427, 431 (8th Cir. 2002) (finding no statutory right to effective assistance of counsel in a civil case); *Stanciel v. Gramley*, 267 F.3d 575, 580-81 (7th Cir. 2001) (same); *Father & Sons Lumber and Bldg. Supplies, Inc. v. NLRB*, 931 F.2d 1093, 1097 (6th Cir. 1991) (finding no statutory right to effective assistance of counsel under the Administrative Procedures Act). If a statutory right to counsel is not sufficient to create a right to the effective assistance of counsel, it follows that regulatory provisions dealing with attorney discipline provide no stronger footing for such a claim.[2]

---

[2] Amici also advance an "equitable tolling" claim as to the motion to reopen issues in this case,

(continued...)

In sum, neither the majority nor amici offer a convincing basis for distinguishing *Coleman v. Thompson*, *supra*, and *Wainwright v. Torna*, *supra*, in the context of removal proceedings. The procedures we established in *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir. 1988), for setting forth an ineffective assistance of counsel claim were founded on the assumption that aliens have a Fifth Amendment right to the effective assistance of counsel in immigration proceedings. That assumption, however, is not supported by Supreme Court case law.

Still, this does not end the inquiry. As the majority explains, we could take the respondent's original late appeal using our certification powers. 8 C.F.R. §§ 3.1(c ), 3.7 (2002); *see also Matter of Jean*, 23 I&N Dec. 373, 380 n.9 (A.G. 2002) (stating that the certification authority is limited to "exceptional" situations and is not intended as a general cure for filing defects or for circumventing the regulations, even when enforcing them results in hardship); *Matter of J-J-*, 21 I&N Dec. 976, 984 (BIA 1997) (same, but addressing our sua sponte reopening powers). Further, the majority could retain the procedural tests announced in *Matter of Lozada*, *supra*, in connection with any case where attorney error or misconduct lies at the heart of our consideration of the case for certification.

The reasons identified by the majority at the end of its decision are more than sufficient for us to decline to certify the respondent's original late appeal in this case. Because of its acceptance of circuit court case law, however, the majority necessarily focuses on whether due process requires us to take the late appeal, as opposed to focusing on considerations pertaining to certification under the regulations. The difference, moreover, is likely to be of meaningful consequence.

For example, the majority's determination that the respondent has a Fifth Amendment right to the effective assistance of counsel in his removal case forces the majority to address the Supreme Court's decision in *Roe v. Flores-Ortega*, 528 U.S. 470, 483-86 (2000) (holding, in a criminal case involving a first appeal as of right, that when counsel files a late appeal that "deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal" without the need to show any additional prejudice in relation to the appeal).

---

[2] (...continued)
but not as to the original untimely appeal, which forms the basis for the ineffective assistance of counsel claim. Statutes of limitation are subject to tolling but jurisdictional provisions are not. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982); *Davis v. Johnson*, 158 F.3d 806 (5th Cir. 1998). Our appeal deadline is a jurisdictional provision. *Matter of Mladineo*, 14 I&N Dec. 591, 592 (BIA 1974) (stating that dismissal of an appeal as untimely "was solely for lack of jurisdiction"); *see also Matter of Escobar*, 18 I&N Dec. 412 (BIA 1983) (addressing timeliness as a question of jurisdiction over the appeal).

The majority is correct that Fifth Amendment due process would not necessarily require identical procedures in different categories of cases. So it is not clear that the ruling in *Roe v. Flores-Ortega*, *supra*, respecting the nature of the prejudice needed in cases of untimely appeals, would extend to removal proceedings, even assuming the right to effective assistance of counsel. But the majority itself recognizes that there already seems to be a circuit split on this very subject, leading potentially to different procedures in different circuits. *Compare Hernandez v. Reno*, 238 F.3d 50 (1st Cir. 2001) (declining to rigidly follow *Roe v. Flores-Ortega* in the immigration context), *with Dearinger ex rel. Volkova v. Reno*, 232 F.3d 1042 (9th Cir. 2000) (applying *Roe v. Flores-Ortega* in the context of an untimely review petition in an immigration case).

None of this would matter, however, if the majority's focus were on our independent certification power instead of the requirements of due process. Further, some level of review of the underlying merits of a late appeal seems inherent in either the majority's approach or in the exercise of discretion involving certification. But, as *Matter of Jean*, *supra*, makes clear, the ordinary hardships arising from an untimely appeal would not warrant certification, meaning that our review could be more selective, with a focus on the needed exceptional situation.

The majority's approach, as applied in this case, seems more focused on a simple assessment of whether there was any merit to the underlying late appeal. The point of an appeal deadline, however, would be substantially undermined for cases involving counsel if the deadline could be overcome by a simple showing of some merit to the appeal after compliance with the procedural steps required by *Lozada*.

As for Board Member Pauley's approach to retaining *Lozada* by analogy to *Dickerson v. United States*, 530 U.S. 428 (2000), we are not the Supreme Court. Board Member Pauley acknowledges that the foundations of *Lozada* could be wrong. But he declines to examine Supreme Court law, because he believes we should adhere to a widely accepted past precedent such as *Lozada*, regardless of whether it is a correct reflection of the law. While I agree that we should not lightly abandon precedents, we do not speak with authority on issues of constitutional law. Further, our pronouncements in *Lozada* on the procedures for presenting a constitutionally based claim are not even fully respected by all courts of appeals. *See Castillo-Perez v. INS*, 212 F.3d 518 (9th Cir. 2000). Perhaps most significantly, Board Member Pauley's approach would seem to require us to override the outcome dictated by statute in some future cases, based on the failings of counsel in those cases, without even identifying the specific source of our authority for such action. The stature of a Board precedent implementing constitutional rulings from the courts of appeals is not, by itself, a sufficient basis for departing

from the dictates of the statute and regulations when Supreme Court law reflects that our precedent does not stand on firm ground.

In the end, we are an administrative tribunal, and we are bound by the authority of higher courts. It is disconcerting when we confront two lines of seemingly irreconcilable higher authority and when we must choose between them. But, in the absence of an analytically sound basis for distinction, I do not believe we would show disrespect to the courts of appeals if we were to follow the direction of the Supreme Court.

I would dismiss the current appeal for these reasons.

*CONCURRING OPINION:* Roger A. Pauley, Board Member

I join part III.C. of the majority opinion but cannot join part III.B. as a basis for continuing to apply *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir. 1988). Carefully examined, the majority opinion declines to declare that *Matter of Lozada* rightfully rests on a constitutional footing. Instead, it observes (1) that the United States Supreme Court decisions relied on for the contrary view, as espoused by the Immigration and Naturalization Service and Board Member Filppu, were decided in a different, i.e., criminal law, context; and (2) that all but one of the circuits to have considered *Lozada*'s underpinnings, including the United States Court of Appeals for the Fifth Circuit, within whose jurisdiction this case arises, have concluded (albeit without citing those Supreme Court decisions) that *Lozada* is grounded on Fifth Amendment due process principles. The majority then find, on the authority of *Matter of Anselmo*, 20 I&N Dec. 25 (BIA 1989), and *Matter of Martin*, 23 I&N Dec. 491 (BIA 2002), that the Board is without power to consider the Service's argument because accepting it would represent the Board's finding that the courts of appeals "that have analyzed the issue . . . have reached an incorrect result." *Matter of Assaad*, 23 I&N Dec. 553, 560 (BIA 2003). Such a conclusion, the majority determine, is "beyond" the Board's limited authority as an administrative decision-making body. *Id.*

I cannot subscribe to this reasoning. Nothing in *Matter of Anselmo*, *supra*, *Matter of Martin*, *supra*, or any other precedent decision of the Board supports, much less mandates, the rather astonishing proposition that we must defer to courts of appeals rulings that are at odds with (and that do not even acknowledge) governing Supreme Court decisions. Indeed, *Matter of Anselmo* itself discusses and distinguishes with approval a precedent in which the Board refused to apply a court of appeals decision, precisely because the issue was before the Supreme Court and had been challenged by the Solicitor General. *Matter of Mangabat*, 14 I&N Dec. 75 (BIA 1972), *aff'd sub nom. Cabuco-Flores v. INS*, 477 F.2d 108 (9th Cir. 1973). It is axiomatic that Supreme Court decisions are the "law of the land" and take precedence over

pronouncements by lower federal courts. While we have properly determined that, in the normal course of events, a court of appeals decision is binding upon us for cases arising in that circuit, to find that we are bound by that rule where the appellate court has itself failed to follow a governing Supreme Court decision would not only derogate from the authority of the Supreme Court, it would tend, in many cases, to prevent the Court from ever having an opportunity to review the issue.

Were it not, therefore, for the ground on which I concur in the majority's result, I would find myself, as does Board Member Filppu, compelled to consider and to determine whether the Supreme Court's rulings on the constitutional scope of the right to counsel support the Board's *Lozada* ruling, and if not, whether any statutory or other basis properly exists therefor. Moreover, in that circumstance, I might well join Board Member Filppu in concluding that its legal foundations, if any, lie in quicksand.[1]

In my view, however, the proper outcome of this case is dictated by adherence to the principle of stare decisis. While the legal basis of *Matter of Lozada*, *supra*, is unclear, and is deliberately left so by the majority's opinion, that is not sufficient reason to abandon it as a precedent. The Supreme Court was recently faced with a similar situation in *Dickerson v. United States*, 530 U.S. 428 (2000), where a substantial challenge was mounted to the constitutional foundation of the Court's decision in *Miranda v. Arizona*, 384 U.S. 436 (1966), that before custodial interrogation by law enforcement may be conducted, certain warnings of rights must be administered. The majority, however, failed to reach the merits and declined on stare decisis grounds to overrule *Miranda*, finding that its requirement of warnings had become "embedded" in police practice. *Dickerson v. United States*, *supra*, at 430.

The requirements of *Lozada* are hardly as entrenched in our national culture as are the *Miranda* warnings, and *Lozada* has only been on the books for some 15 years, in contrast to *Miranda*'s 34 years when *Dickerson* was decided. Nevertheless, *Lozada* has generated, in that period, an all but universal degree of acceptance and adherence in the country, and it has

---

[1] The majority disregard the Supreme Court decisions on which Board Member Filppu and the Service rely because they were rendered in a different, i.e., criminal law, context. This, however, is not a sufficient basis of distinction. Generally speaking, criminal defendants enjoy the protection of constitutional guarantees of the right to counsel and due process of law to a *greater* extent than do aliens in civil immigration proceedings. The majority recognize this principle—indeed they accord it determinative effect—when they find that the automatic prejudice rule that the Supreme Court itself has held applies in the criminal context to counsel's failure to file a timely appeal does not apply in this case. But the majority unaccountably fail to apply the same principle to the Supreme Court's due process decisions regarding the right to effective assistance of counsel or to explain why *limitations* on that right acknowledged by the Supreme Court in the criminal context do not apply, a fortiori, in immigration proceedings.

become "embedded" in immigration law and practice through application by immigration law practitioners, Immigration Judges, and the courts in thousands of cases. Moreover, in contrast to the situation in *Dickerson*, where, shortly after *Miranda* was issued, Congress enacted a statute embodying its disagreement that warnings are a constitutionally necessary ingredient for determining the admissibility of statements given during custodial interrogation, it is noteworthy that Congress has not seen fit to even attempt to reject or modify *Lozada* through legislation, despite having passed major immigration reforms in the years since it was decided.

Therefore, whether or not I would have agreed with *Lozada*'s "reasoning and its rule in the first instance, *stare decisis* weighs heavily against overruling it now." *Dickerson v. United States*, *supra*, at 429; *cf. Matter of Velarde*, 23 I&N Dec. 253, 268 (BIA 2002) (Pauley, dissenting). Finally, *Lozada*'s rule may well have served to improve the quality of legal representation afforded to aliens in immigration proceedings and thus, like the warnings required by *Miranda*, the effect of *Lozada* does not provide the "special justification" the Supreme Court has held is necessary to justify overturning an established precedent. *Dickerson v. United States*, *supra*, at 429.[2]

I therefore agree with the majority that *Lozada* remains applicable to the respondent's case. But as earlier noted, I also join in the majority's holding, in accordance with a decision from the First Circuit,[3] which initially affirmed *Lozada*, that the respondent needed to demonstrate that he suffered prejudice from the ineffective assistance of counsel in failing to file a timely notice of appeal, but he did not do so. Accordingly, I concur in the order dismissing his appeal.

---

[2] Board Member Filppu criticizes this approach because "we are not the Supreme Court" and "do not speak with authority on issues of constitutional law." *Matter of Assaad*, *supra*, at 568 (Filppu, concurring). I do not find these facts to weaken the propriety of relying on stare decisis principles as a basis for deciding this case. Presumably, Board Member Filppu is implying that the decisions of lower tribunals should be regarded as less worthy of precedential deference by those tribunals, because of the possibility of reversal by a higher authority. But I am aware of no such doctrine. Rather, the extent of reliance on settled questions of law, which as noted above is great in this case, plays the major part in stare decisis. In short, stare decisis is not only for the Supreme Court. *See, e.g.*, *EEOC v. Trabucco*, 791 F.2d 1 (1st Cir. 1986).

[3] *Hernandez v. Reno*, 238 F.3d 50, 55-57 (1st Cir. 2001).